# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00046-COA

**OMAR K. HUMPHREY**                                                        **APPELLANT**

**v.**

**STEVE HOLTS, CHIEF OF POLICE OF THE**                          **APPELLEES**
**CITY OF SENATOBIA, AND JOHN W.**
**CHAMPION, DISTRICT ATTORNEY**

DATE OF JUDGMENT:         12/18/2020
TRIAL JUDGE:         HON. VICKI B. DANIELS
COURT FROM WHICH APPEALED:    TATE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:    IMHOTEP ALKEBU-LAN
ATTORNEY FOR APPELLEES:    JERRY WESLEY HISAW
NATURE OF THE CASE:    CIVIL - OTHER
DISPOSITION:    REVERSED AND REMANDED - 02/21/2023
MOTION FOR REHEARING FILED:

### BEFORE CARLTON, P.J., LAWRENCE AND EMFINGER, JJ.

### EMFINGER, J., FOR THE COURT:

¶1.     On March 18, 2020, Omar K. Humphrey made separate written requests for records pursuant to the Mississippi Public Records Act of 1983 (MPRA),[1] to Senatobia Chief of Police Steve Holts and District Attorney John W. Champion. After receiving no response to his requests, on June 3, 2020, Humphrey filed a complaint in the Tate County Chancery Court seeking an order to require production of the requested records. On October 23, 2020, Humphrey obtained a subpoena duces tecum issued to Chief Richard Chandler, the custodian of records at the Senatobia Police Department. This subpoena was served on the Senatobia

---

[1] Miss. Code Ann. §§ 25-61-1 to -19 (Rev. 2018).

Police Department on October 28, 2020. Ultimately, the chancery court found that the requested items were exempt from the MPRA. Humphrey appeals from the chancellor's order dismissing his complaint and granting the City's motion to quash the subpoenas. Because we find that the chancellor erred by dismissing the complaint and quashing the subpoenas, we reverse and remand for an evidentiary hearing, findings of fact, and other proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2. On February 11, 1998, Humphrey was convicted of capital murder and sentenced to life in prison without eligibility for parole. Humphrey's conviction and sentence were upheld by the supreme court. *Humphrey v. State*, 759 So. 2d 368 (Miss. 2000). Humphrey filed numerous petitions for post-conviction relief in the intervening years between the denial of his appeal and the present action, and most of them were denied as successive writs.

¶3. As noted above, more than twenty-two years later, Humphrey made written requests for public records to Holts, the then-acting chief of police for the Senatobia Police Department and to Champion,[2] the district attorney for DeSoto County. Both requests sought a "copy and transcription" of a wire tape recording between Humphrey and Patrick Reed,[3] a jailhouse informant, any Senatobia police reports surrounding the wiring of Reed, and certain statements he gave to the Senatobia police (collectively, "requested items"). Neither

---

[2] John W. Champion, the district attorney for the Seventeenth Circuit Court District, died on September 4, 2022.

[3] Patrick Reed is referred to in the record as both "Reed" and "Reid."

party responded to Humphrey's request.

¶4.    Humphrey filed his pro se "Complaint for Violation of the Mississippi Public Records Act of 1983," the subject of this action, against Holts and Champion in an effort to obtain the records he contends he needs to collaterally attack his conviction and sentence. Summonses apparently were issued on June 10, 2020, for both Champion and Holts. Neither summons is included in the record, but both are listed on the chancery court's docket. There is no proof of service included in the record. The clerk's docket, however, contains entries showing that each summons was returned, and the entries indicate that both Champion[4] and Holts were served on July 29, 2020.

¶5.    On August 3, 2020, Humphrey filed with the chancery clerk a pro se proposed "Duces Tecum Specified Public Records Order." There is no evidence that this proposed order was ever presented to the chancellor, and it is not signed by the chancellor. On August 26, 2020, Imhotep Alkebu-Lan entered his appearance as the attorney of record for Humphrey. Thereafter, relative to the subpoenas, the following docket entries appear:

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 10/23/2020 | 13 | | SUBPOENA ISSUED for Production/Inspection. (MABRY, KAYLEE) (Entered: 10/23/2020) |

---

[4] Champion did not file an answer or any other response to the complaint. Humphrey filed no motion for the chancellor to find Champion in default or otherwise require a response from the district attorney.

3

| 11/04/2020 | 15 | SUBPOENA RETURNED Executed filed by OMAR K HUMPHREY. The served subpoena is directed to Chief Richard Chandler. (Alkebu-Lan, Imhotep) (Entered: 11/04/2020) |
| 11/05/2020 | 16 | SUBPOENA ISSUED TO JOHN CHAMPION (MABRY, KAYLEE) (Entered: 11/05/2020) |
| 11/10/2020 | 17 | SUBPOENA DUCES TECUM ISSUED (MABRY, KAYLEE) (Entered: 11/10/2020) |

None of the subpoenas listed are included in the record, and no copies of returns are included in the record.

¶6.     Holts, through counsel for the City of Senatobia, responded with a motion to dismiss and a motion to quash on November 13, 2020. The motion to dismiss alleged that Humphrey had failed to state a claim for which relief could be granted because the complaint did not identify the violation of the MPRA that allegedly occurred. As an additional cause to dismiss the complaint, the City's motion alleged that Humphrey had failed to comply with Mississippi Code Annotated section 25-61-13 by serving written notice of the filing of the complaint on the Mississippi Ethics Commission.

¶7.     The motion to quash indicated that the Senatobia Police Department had been served with a subpoena duces tecum on October 28, 2020. The motion stated that the Senatobia Police Department was no longer in possession of the items requested in the subpoena. The motion further noted that if the requested items did exist, they would have been submitted to the District Attorney's Office for the prosecution of the original charges. Accordingly, the motion sought to quash the subpoena and relieve the Senatobia Police Department from any

4

obligation to produce the requested items.[5]

¶8. Humphrey filed written responses to both motions on November 23, 2020. In his response to the motion to dismiss, Humphrey argued that the complaint alleged that both Holts and Champion were served with a proper public-records request and that neither responded to the request. Further, Humphrey attached to his response a copy of a letter dated September 18, 2020, by which he forwarded to the Mississippi Ethics Commission a copy of the complaint. In his written response to the motion to quash, Humphrey stated that he was in possession of evidence, that he would present at the hearing showing the Senatobia Police Department was in possession of the requested items in 2019.

¶9. The chancellor conducted a hearing on the motions on December 14, 2020. At that hearing, for the first time, counsel for Holts argued that the requested records were "not disclosable by us" and were exempt from the Public Records Act. The chancellor asked for a response from Alkebu-Lan, who advised the court that he wanted to call Humphrey as a witness and that he also had former Police Chief Holts present to testify. The chancellor told counsel that she and her staff had done some research, and, based upon that research, she had concluded that the items requested did not "fall under the Public Records Act." The chancellor ruled from the bench that the motion to dismiss would be granted because the items sought were not public records. Alkebu-Lan then requested a full hearing on the matter. The chancellor ruled that the issue presented was a "matter of law" and that she did not

---

[5] There were no affidavits attached to either of the motions filed by the City.

intend to hear any testimony on the issue; however, she indicated that she would hear any further legal argument from Alkebu-Lan. Counsel referred the court to the written responses to the motions and asked that Humphrey be brought into the courtroom. The chancellor denied the request to bring Humphrey into court. Alkebu-Lan argued that the motion to quash simply alleged that the City did not have the records and does not raise the issue that the requested items were "not records under permissible-records under the Public Records Act." The chancellor then repeated that her research "exempts these sorts of matters from the Public Records Act" and that her ruling was "that it does not fall under the Public Records Act."

¶10.    An order granting the motion to dismiss and motion to quash was entered on December 18, 2020. Humphrey appealed from that order. We declined to consider the merits of Humphrey's claims on appeal, finding a lack of jurisdiction. We held:

> It appears from the record that Champion was properly served but failed to file an answer, join in Holts' motions to dismiss and quash, or file any other responsive pleading. As a result, and without addressing the merits thereof, the order entered by the chancellor did not resolve Humphrey's claim against Champion and therefore was not a "final" order from which an appeal may be taken. We dismiss for lack of an appealable judgment.

*Humphrey v. Holts*, No. 2021-CA-00046-COA, 2021 WL 5459422 at *2 (¶6) (Miss. Ct. App. Nov. 23, 2021). The supreme court granted Humphrey's petition for writ of certiorari and reversed our initial decision, finding that the order was a final appealable judgment. Specifically, the Supreme Court found:

> We cannot say why the chancery court dismissed the complaint as to both

6

defendants, only that her order did so. The transcript indicates she found the records exempt from disclosure, presumably under Mississippi Code Section 25-61-3 (Rev. 2018). Likewise, we make no finding as to whether dismissing the entire complaint was appropriate. That issue is not before this Court, and the distinction between dismissing Holts alone, as opposed to dismissing both defendants, does not appear to be raised by Humphrey. Finally, we make no decision on the merits of Humphrey's claim. We only find that the Court of Appeals should have the opportunity to make such a decision.

*Humphrey v. Holts*, No. 2021-CT-00046-SCT, 2022 WL 3097545 at \*1 (¶6) (Miss. Aug. 4, 2022). The matter was remanded to this Court to consider the merits of Humphrey's initial appeal. *Id*. at \*2 (¶9).

## STANDARD OF REVIEW

¶11.   We set forth the standard of review regarding the grant, or denial, of a motion to dismiss in *Crum v. City of Corinth*, 183 So. 3d 847, 850-51 (¶10) (Miss. 2016):

> "A motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure raises an issue of law, which is reviewed under a de novo standard." *Rose v. Tullos*, 994 So. 2d 734, 737 [(¶11)] (Miss. 2008) (citing *Cook v. Brown*, 909 So. 2d 1075, 1077-78 [(¶8)] (Miss. 2005)).   A Rule 12(b)(6) motion "tests the legal sufficiency of the complaint." *Little* [*v. Miss. Dep't of Transp.*], 129 So. 3d [132,] 135 (Miss. 2013) (quoting *Little v. Miss. Dep't of Human Servs.*, 835 So. 2d 9, 10-11 (Miss. 2002)). "'[I]n order to grant a Rule 12(b)(6) motion to dismiss, there must appear to a certainty that the plaintiff is entitled to no relief under any set of facts that could be proved in support of the claim.'" *Little*, 129 So. 3d at 135 (quoting *Little*, 835 So. 2d at 11).   When considering a Rule 12(b)(6) motion, "[t]he allegations in the complaint must be taken as true." *Rose*, 994 So. 2d at 737 [(¶11)] (citing *Ralph Walker, Inc. v. Gallagher*, 926 So. 2d 890, 893 (Miss. 2006)).

## ANALYSIS

**I.      Whether the chancery court erred by granting the motion to dismiss and the motion to quash filed by the City of Senatobia.**

7

¶12. At the hearing, the chancellor ruled that the requested items were exempt from the MPRA. Neither the City in its pleadings, nor the chancellor in her bench ruling or order, specifically identified the requested items as "investigative reports" or referenced to Mississippi Code Annotated section 25-61-3(f).[6] On appeal, the City agrees that the Senatobia Police Department is a "public body" and that the requested items are "public records" pursuant to the MPRA. However, now on appeal, the City specifically contends that

---

[6] Miss. Code Ann. section 25-61-3(f) provides:

"Investigative report" means records of a law enforcement agency containing information beyond the scope of the matters contained in an incident report, and generally will include, but not be limited to, the following matters if beyond the scope of the matters contained in an incident report:
  (i) Records that are compiled in the process of detecting and investigating any unlawful activity or alleged unlawful activity, the disclosure of which would harm the investigation which may include crime scene reports and demonstrative evidence;
  (ii) Records that would reveal the identity of informants and/or witnesses;
  (iii) Records that would prematurely release information that would impede the public body's enforcement, investigative or detection efforts;
  (iv) Records that would disclose investigatory techniques and/or results of investigative techniques;
  (v) Records that would deprive a person of a right to a fair trial or an impartial adjudication;
  (vi) Records that would endanger the life or safety of a public official or law enforcement personnel, or confidential informants or witnesses;
  (vii) Records pertaining to quality control or PEER review activities; or
  (viii) Records that would impede or jeopardize a prosecutor's ability to prosecute the alleged offense.

8

the requested items are "investigative reports" and are exempt from the provisions of the MPRA pursuant to section 25-61-3(f).

¶13. In a similar case, *DeLoge v. DeSoto County Sheriff's Department*, 230 So. 3d 1026, 1030 (¶14) (Miss. Ct. App. 2017), this Court stated:

> We now turn to whether the chancery court erred in granting DCSD's motion to dismiss. As we have stated, a motion to dismiss for failure to state a claim is a question of law, which we review de novo. *Covington* [*Cty. Bank v. Magee*], 177 So. 3d [826,] 828 (¶5) [(Miss. 2015)]. The instant case required the chancery court to determine whether the documents at issue were investigative prior to ruling on DCSD's motion to dismiss. Whether documents "constitute an 'investigative report' . . . is a question of fact[,] which must be answered on a case-by-case basis." Miss. Att'y Gen. Op., 2010-00381, 2010 WL 4105478, *Janous* (Sept. 8, 2010). As such, this case presents a mixed question of law and fact for our review. "[P]roper review of mixed questions of law and fact require that the . . . court's 'factual findings be reviewed for clear error[,] and that its interpretation of the law be reviewed de novo.'" *Burgess v. Patterson*, 188 So. 3d 537, 547 (¶31) (Miss. 2016) (quoting *Hewes v. Langston*, 853 So. 2d 1237, 1241 (¶13) (Miss. 2003)).

In *DeLoge*, the requested items were submitted to the chancellor for an in camera review. After an examination of the records, the chancellor determined that the documents were investigative reports and were exempt from the provisions of the MPRA. This Court affirmed the chancellor's decision on appeal.

¶14. The City seems to agree that a determination of whether the records sought constitute exempt investigative reports must be determined on a "case-by-case" basis. The records sought were more than twenty years old. Some records may well have been disclosed in criminal discovery and used in the criminal prosecution years ago. The purposes for which the exemption exists may or may not apply to the requested items at this time. However,

9

because no records were submitted to the chancellor, she did not have the opportunity to examine the records to make that determination. Accordingly, we find that the chancellor erred by dismissing the complaint and granting the motion to quash based upon the court's finding that the requested items were exempt from the MPRA without first having examined the requested items. Upon remand, if such records are submitted to the chancellor for review, the chancellor should, as to each item, make findings of fact as to the nature of the record reviewed and determine whether an exemption applies to such item.

## II. Whether the chancellor's order will be upheld upon another basis.[7]

¶15. In its motion to quash the subpoenas, the City stated that it was no longer in possession of the requested items. The City makes a similar representation in its brief on appeal. Before the trial court, Humphrey advised the court that he wished to put on testimony to rebut the City's representation in this regard. In *Scruggs v. Caldwell*, 970 So. 2d 1298, 1299 (¶4) (Miss. Ct. App. 2007), this Court found that there is no obligation to produce documents a person does not have. In the record before us, however, there is no affidavit or sworn testimony to support the City's contention that it is no longer in possession of the requested items. Further, Humphrey was not given the opportunity to provide evidence to the contrary. Because there is no evidentiary support for the City's claim that it no longer possesses the requested documents and because the chancellor failed to allow Humphrey to

---

[7] In *Davis v. City of Jackson*, 240 So. 3d 381, 384 (¶13) (Miss. 2018), the supreme court held that "an appellate court may affirm a trial court if the correct result is reached, even if the trial court reached the result for a different reason."

provide evidence to the contrary, we cannot affirm the chancellor's ruling on the basis that the City is no longer in possession of the requested items. This issue must also be remanded to the trial court for a full evidentiary hearing.

### III. Whether the chancery court erred in failing to allow Humphrey to attend the hearing.

¶16. Humphrey, who was in custody at the time of the hearing, was apparently not in the courtroom when the arguments on the pending motions began. During Alkebu-Lan's response to the City's argument in support of the motions, he advised the court that he had two witnesses prepared to testify: Humphrey and Holts. When counsel asked that Humphrey be brought into court, the chancellor denied the request and stated that the issue before the court required only legal argument and that she would not hear testimony on the issue. At that point, Alkebu-Lan concluded his argument without presenting the chancellor with any additional argument as to why Humphrey should be brought into the courtroom.

¶17. On appeal, Humphrey makes three arguments, two in his initial brief and a third in his reply brief. Because these issues were not raised before the trial court, they are barred from consideration on appeal. *See Mitchell v. Miss. Dep't of Emp. Sec.*, 348 So. 3d 1030, 1034 (¶13) (Miss. Ct. App. 2022). However, because this case is being remanded for other reasons, we will briefly address this issue.

¶18. Humphrey first argues that the chancellor's failure to allow his presence in the courtroom during the hearing violated his Sixth Amendment rights. The cases cited by Humphrey in support of this argument are all criminal cases. This is a civil action to which

11

the Sixth Amendment, or confrontation clause, does not apply. In *DeLoge*, 230 So. 3d at 1032 (¶20), this Court ruled:

> "The Confrontation Clause of the Sixth Amendment guarantees that '[i]n all *criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Corbin v. State*, 74 So. 3d 333, 337-38 (¶13) (Miss. 2011) (quoting *Davis v. Washington*, 547 U.S. 813, 821 (2006)). This was a civil action in which DeLoge was the plaintiff—not a criminal action in which he was the defendant. Therefore, the Confrontation Clause is not implicated so as to require DeLoge's presence. *Furthermore, the chancery court did not hear any testimony at the hearing*. The court merely announced its ruling on the motion to dismiss.

(Emphasis added). Because this too is a civil proceeding, Humphrey's Sixth Amendment argument is without merit.

¶19. Secondly, in his initial brief, Humphrey argues that the chancellor erred by keeping him out of the courtroom because he filed the complaint pro se and that he had remained as co-counsel after Alkebu-Lan entered his appearance. But again, that argument was not made before the chancellor, and there is nothing in the record to suggest that Humphrey wished to continue to participate as counsel in this matter. In *Dunn v. Yager*, 58 So. 3d 1171, 1190 (¶47) (Miss. 2011), the supreme court held:

> Should a civil litigant desire to act as her own counsel and participate in the proceedings, there must first be timely notice to the court and the opposing party of such intention. Such timely notice may be evidenced by an entry of appearance, motion, or inclusion in a case-management or pre-trial order. Thereafter, the pro se litigant must follow the procedure and courtroom protocol required of counsel in every other case.

(Footnote omitted). Should Humphrey wish to participate as his own counsel in some fashion, this should be timely brought to the attention of the chancellor on remand.

12

¶20. Finally, in his reply brief, Humphrey argues that as a party to the litigation, he had a right pursuant to Article 3, Section 25 of the Mississippi Constitution to be present in the courtroom. In *Dunn*, 58 So. 3d at 1189 (¶46), the supreme court interpreted this constitutional provision as follows:

> Article 3, Section 25 provides, in pertinent part, that a civil litigant may not be "debarred from prosecuting . . . by him or herself, or counsel, or both." Miss. Const. art. 3, § 25. To "debar" means "1. To bar or exclude: shut out. 2. To forbid, hinder, or prevent." Webster's II New College Dictionary 290 (1995). To "prosecute" means "1. To pursue or persist in so as to finish . . . . 3.a. To initiate legal or criminal court action against. b. To seek to enforce or obtain by legal action." *Id.* at 888. *See also* Black's Law Dictionary 1385 (4th ed.1968) (defining "prosecute" as "[t]o follow up; to carry on an action or other judicial proceeding; to proceed against a person criminally. To 'prosecute' an action is not merely to commence it, but includes following it to an ultimate conclusion."). Thus, the plain language of Article 3, Section 25 lends itself to permitting a civil litigant, his or her counsel, or both, not only from commencing the legal action, but also bringing it to completion.

As further instruction as to the application of this provision, in a case where a party had been excluded from the courtroom during the testimony of one witness, the supreme court in *Miller v. Smith*, 229 So. 3d 100, 105-06 (¶23) (Miss. 2017), found as follows:

> Miller argues his removal from the courtroom violated Article 3, Section 25 of the Mississippi Constitution. "No person shall be debarred from prosecuting or defending any civil cause for or against him or herself . . . by him or herself, or counsel, or both." Miss. Const., art. 3, § 25. The Court of Appeals rejected Miller's argument, finding no violation "[b]ecause [Miller's] counsel was present during Kristen's testimony . . . ." *Miller*, 229 So. 3d [148,] 153 [(Miss. Ct. App. 2016)]. However, the provision prohibits debarment of the individual "by him or herself." Miss. Const. art. 3, § 25. The presence of Miller's counsel did not cure the error that Miller, individually, was removed from the courtroom. As a result, a violation of Article 3, Section 25 occurred.

While the supreme court found that a constitutional violation had occurred, the error, in that

13

case, was found to be harmless.

¶21.    These cases hold that a party to civil litigation has a right under the Mississippi Constitution to be present and participate as counsel in that litigation. However, physical appearance inside the courtroom is not always required. The supreme court held in *Miller* that "[t]he trial court should have provided a mechanism, such as closed-circuit TV, for Miller to observe witness testimony when he was removed from the courtroom." *Id.* at 106 (¶28). Should Humphrey be excluded from the courtroom for some reason on remand, provisions must be made for him to see and hear the proceedings and to consult with his attorney during the proceedings.

¶22.    On remand, Humphrey's presence in the courtroom should be considered by the chancellor in light of the requirements of Article 3, Section 25 of the Mississippi Constitution and the cases interpreting that provision.

## CONCLUSION

¶23.    The chancellor's order dismissing the complaint and granting the City's motion to quash the subpoenas is reversed, and the matter is remanded to the chancery court for an evidentiary hearing requiring the City to satisfy its burden to prove that it is no longer in possession of the requested records and giving Humphrey an opportunity for rebuttal, findings of fact as to the nature of the records reviewed and whether an exemption applies, and other proceedings consistent with this opinion.

¶24.    **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. SMITH, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**